The next case today is Vincent E. Stewart versus the City of Framingham et al, appeal number 20-1135. Attorney Wish, please introduce yourself again for the record. Thank you. Good morning, your honors. Again, Benjamin Wish for the plaintiff appellant Vincent E. Stewart. Judge Lynch, may I have one minute for rebuttal, please? Yes. Thank you. It was error for the district court to conclude at summary judgment that no reasonable jury could ever find that Mr. Stewart's complaints against orders, that Chief Ferguson's right-hand man, Mr. Simino, was dangerously exercising police powers where he lacked the training or authorization to do so, was a substantial or motivating factor in either or both of the adverse employment actions. There are two relatively straightforward avenues for this court to recognize that error. The first is that there are myriad, clear, genuine disputes of material fact, including those upon which the appellees seek to rely in their briefing without recognizing those disputes. Second, the district court below failed entirely to consider, among other circumstantial evidence, the pervasive influence that Mr. Simino had upon the investigation into Mr. Stewart for truthfulness. From writing the notice of investigation, it failed to identify the allegedly untruthful statements, all the way through to eventually advising the ultimate decision-maker, Deputy Chief Trask, that Mr. Stewart should be terminated. That was particularly problematic where, consonant with this court's decision in Coriglia v. Hertz, there an age discrimination retaliation case that a neutral decision-maker can cause a defendant employer to be liable if they rely upon information that's inaccurate, misleading, or incomplete because of another employee's animus. Could you clarify, is there any evidence that Simino supplied any false information to the final decision-maker? Thank you, Judge Chiara. The evidence is not that he supplied false information, but that in myriad other respects causing the investigation to be incomplete, that exculpatory information was removed, and that Mr. Stewart was not provided an opportunity to actually defend himself. I'm happy to get into that. Give me an example of the specific exculpatory evidence that Simino knew that he didn't provide to the decision-makers and that would have made a difference in the outcome of the decision. Yes, as Deputy Chief Brandolini testified at deposition, there were multiple statements in Mr. Stewart's report that were true and that would have lended themselves to Mr. Stewart's credibility, which is obviously essential when making a determination about whether or not... I'm still looking for an example. Yes. Yes, Your Honor. Among other things, Deputy Chief Brandolini testified at his deposition that Mr. Stewart's 2014, when it was set to expire, was correct. There are many others in the record. The ultimate import, though, here was that Mr. Brandolini testified that there were a number of these conclusions. Stay with the one you gave me. So Simino didn't say anything contrary to that. He simply didn't mention that that was a correct statement by your client. That is one example, that's right. Is there any evidence that the fact finder thought that that was therefore a false statement? In other words, if your client says seven things and Simino says three of them are false, it's hard to see how he's misleading someone by not saying the other seven are true. Your Honor, I take your point and you're correct that the fact finder there did not rely upon that because in the ultimate report there was nothing said about each of the statements that Deputy Chief Brandolini said were true one way or the other. But when the fact finder in the ultimate decision maker was looking whether there was a truthfulness, whether Mr. Stewart was truthful, that certainly goes to credibility. If I could address the myriad other ways in which Mr. Simino... Before you leave that point, just so I understand, is this the hearing officers? What was before the hearing officer or are we focused on what's before the report that's given to the hearing officer? So I was focused on the report that was given to the hearing officer. So with respect to the report that's given to the hearing officer, does the record support the conclusion that the person who authored that report? So that is one of the issues that is hotly in dispute, Your Honor. In fact, it is a Pele's contention that Simino played no role at all in investigating the matter or writing the report. Exactly to the contrary, there's evidence in the record, including from Deputy Chief, excuse me, from Chief Ferguson that Mr. Simino was the investigator. In whose name is the report submitted? Deputy Chief Brandolini. Okay. And with respect to the person then who submitted that report, were they under the... What you're saying Simino left out? There is no evidence in the record that they did not know that to be true. No, there is not. How could we say that the thing that you just identified as Simino leaving out would have influenced the person who prepared the report in thinking it not to be true? Since there's nothing to indicate they thought it wasn't true. Your Honor, the standard here is not for this There's got to be some basis beyond speculation for thinking it had some influence. And if you're saying that there's nothing on which you could base the conclusion that Brandolini thought it was not true, then the fact that it wasn't mentioned by Simino to Brandolini is of no consequence for the point you need it to be, right? Your Honor, I take your point as to this piece. I won't push it any further. If I may address the myriad other ways in which Mr. Simino influences... Counsel, isn't it true that you were invited to... Assuming you were counsel before the civil service hearing officer, you were invited to submit any evidence you wanted to. Your client was given the opportunity to testify and you made the choice, you and your client, not to provide any of this evidence that you are now recounting that you think works in your favor. Isn't that... Your Honor, I apologize. That is not correct, Your Honor. In fact, we repeatedly attempted to submit evidence... Did your client testify? No, Your Honor. Okay. And other than the Brandolini report, did your client put into evidence any documents? Your Honor, we sought to put into evidence multiple other documents and evidence of the pervasive influence of Mr. Simino, beginning with issuing a notice of investigation nearly two months after the investigation actually began. It's funny. The hearing officer does not say anything of the sort. And then the town relies on the hearing officer's report, which found that there was a very good basis to discipline, indeed, to terminate your client because he had charged another member of the department with criminal offenses and that was not true. So why doesn't the town have a perfectly good Mount Healthy defense here? So, Your Honor, to address the Mount Healthy issue, the reality is that if the town had actually undertaken an investigation without Mr. Simino's influence, it never would have concluded, a reasonable jury could infer, that Mr. Stewart was untruthful at all. And I'll give a number of examples here. One is that it's undisputed on the record that it was, and this is one of the ad issue facts, that it was important to find out whether Mr. Stewart's that he had been uncertified on the less lethal shotgun just six months earlier was true. But the investigation failed to reveal that. In fact, Mr. Ferguson was never formally interviewed at all. As a result, that report incorrectly concluded that Mr. Stewart lied about what Chief Ferguson had said. Now, counsel, you've reserved a minute unless any of my colleagues has a question. We'll wait for your rebuttal. May I finish this point? No. Thank you, Mr. Wish. You can mute your device at this time. Mr. Clardy, could you please unmute your device? May it please the court. Yes, please introduce yourself on the record. Thank you. Thank you. May it please the court. I'm John Clardy representing the City of Framingham and Brian Simone on this matter. Here, as you know, the plaintiff was terminated in February 2017 after this detailed internal investigation of some 357 pages found that he falsely accused a fellow lieutenant of 36 criminal counts. And later, an independent hearing officer, Attorney Jack Collins, took evidence, testimony, and recommended termination. Notably, the plaintiff did not aggrieve this termination. The plaintiff did not even appeal to civil service. Instead, he filed this action claiming that a report he made a year and a half earlier in June of 2015 concerning an assistant to the chief, a special police officer, was somehow the cause. And as the court properly found below, there's absolutely no evidence linking the two. There's no evidence that the speech supposedly made by the plaintiff in this union letter was ever a cause of the termination decision. Plaintiff's first amendment retaliation claim fails on multiple levels. We argued first there was no substantial motivating factor here between the speech and the termination decision, that the Mount Healthy defense applies. He would have been speaking as a private citizen when making this report concerning the special police officer role of Simino. And therefore, the Garcetti doctrine would bar his speech. And that the city's interest in the truthfulness of its officers under Pickering balancing outweighs the plaintiff's speech. So on multiple levels, the first amendment retaliation claim fails. In your brief, you seem to say that Simino didn't know of the letter. Yes, that's our position. And in fact, the only evidence... The record is very clear that one witness in the... I think the district court, in fact, so agreed, said he did know. He commented on it. Well, so the only evidence that the plaintiff points to is that Sergeant Brown affidavit, which was put forward at motion for summary judgment period. And it was, in our view, contrary to his earlier deposition test, sworn deposition testimony. But the district court did not strike it. Correct. The district court did not strike it, but we see... So it's a conflicting testimony by a witness at Rule 56. Don't we assume that you lose on that? Well, the sham affidavit rule would apply, Your Honor. I think, and this is a de novo period of review for this court. So you could look at his affidavit and compare it to his deposition testimony, wherein he said, I don't remember what even if Vincent Stewart's name was mentioned during that phone call. So you want us to find the district court abused its discretion in its application of our discretionary sham affidavit rule? No, Your Honor. I want you to review the summary judgment decision de novo, and you can make an independent finding based on a review of the record that this, in fact, was a sham affidavit rule because it contradicted his prior sworn testimony under oath. Mr. Clardy, I thought that perhaps one reason the district court didn't pursue the issue was it really didn't think it was germane to the summary judgment issues before it, especially the Mount Opponent had, in fact, lied and falsely accused a fellow officer of crimes. Yes, Your Honor, I agree. The existence of Sergeant Brown's testimony was really not necessary for her to dispose of this matter. Can I ask you about that? I'm just trying to figure out what the analytics of how we have decided this are. If there's evidence that Simino knew about the complaint against him by the plaintiff here, and if there's evidence that he participated in the preparation of the report for the hearing officer, and this, I think, is obviously a disputed point, but if Simino influenced the report in a way that had an influence on the hearing officer's resolution of the issue, then the Mount Healthy issue can't decide it alone because then the Mount Healthy issue would be they're relying on the hearing officer's determination, but if the hearing officer's determination was shaped by Simino, and Simino had a reason to be retaliating and shaping the report, then we're back to the issue of did Simino have an influence? On the report that influenced the hearing officer. I don't see how we can escape that question once we say that Simino knew about it. I don't think those are necessarily intertwined, Your Honor. I think the Mount Healthy defense is independent from the substantial motivating factor. In theory, it is, but here, the only basis for the Mount Healthy defense is the hearing officer's report. No, that's not true, Your Honor. The basis for the Mount Healthy defense Five minutes remaining. is the fact that the evidence, including the Brandolini report, established untruthfulness. But if that evidence was influenced by activity and investigation by Simino, then the Mount Healthy defense is dependent on the prior resolution of the question of whether Simino influenced the report. You have arguments on that, so it's not fatal to your position, but I don't quite see how the Mount Healthy thing can stand independent of that. I'm still not following that. A couple of things, Your Honor. There's no evidence of this influence that's supposedly alleged, so we don't concede that, but the existence of influence to highlight a factual matter and de-emphasize supposedly inconsistent testimony, that doesn't render false the finding that he was untruthful. So the existence of influence to emphasize untruthfulness doesn't rely on that. The idea is that even if we credit all the influence, this would be the idea. Imagine Simino did know about the complaint against him by the plaintiff. Imagine Simino did have a role in influencing the investigation. Nonetheless, if we could somehow excise the influence that Simino exerted on that, there would be such overwhelming evidence of the plaintiff's lying that the conclusion could be made that they would have fired him for that anyway, there are no comparators, so we don't have to worry about the causation question. Is that the idea? Yes, Your Honor, but I think it goes deeper than that because you can look at the evidence at 357-page report by Brandolini, which established the plainly untruthful statements, and there's 29 of them identified in the report. My brother picks a few out which he wants to contest, but he had his opportunity to do so at the hearing and in an appeal of the hearing, and he waived that right to challenge that factual evidence at that stage and now tries to circumvent that by looking back to a statement he made a year and a half earlier and somehow saying that that renders the later investigation as invalid. Interestingly, on the influence piece, you'll note that in the qualified immunity argument, the plaintiff suggests that Simino shouldn't be entitled to qualified immunity, so he can't have it both ways. He's basically trying to portray Simino as this puppermaster controlling the chief of police, controlling the investigator, controlling the hearing officer on one hand, and on the other hand, trying to say he's not entitled to qualified immunity because he's an administrative official who has no decision-making capacity, so I think he can't have it both ways, and I think it's clear from his job description and Simino's role in the case, Brandolini's own testimony that I was not influenced. It's my report. He stood by his report, and there's no evidence that Brandolini had animus based on the speech about a special police officer. Remember, the entire leadership of the police department agreed with the content of plaintiff's speech. They said, yeah, you're right. We should set limits on the special police officer. Yes, we should have a policy in place, and they did so, so now he's trying to circumvent it by saying that he somehow adopted plaintiff's animus when, in fact, all the police leadership actually agreed with the content of his speech. It's nonsensical, and I think that the trial court below saw right through it. This is no more than a post hoc justification trying to circumvent the consequences of his own attempt to take out his rival, another police lieutenant, by bringing these false charges. Plaintiff is now facing those consequences and is trying to circumvent his own actions by pointing to some pre-existing hidden motive by someone who didn't even have a role as a decision maker. The trial court saw right through that. They granted summary judgment because they found there was no link here, no evidence of causation, and further found that we would have made the same action even if the speech existed. We would have to terminate a police lieutenant who was found to have falsely accused another lieutenant of 36 crimes. To fail to do so would have been contrary to the best interests of the city, and that rolls into the other defense we have of the Pickering balancing claim. Our interest in the truthfulness of our police officers very much outweighs the plaintiff's interest in speaking out about the training of an individual member of the department. That's he was complaining about special police officer training for Seminole. That does not outweigh the interest of the city in having a truthful police department. Certainly under Pickering balancing analysis, the town would prevail on that grounds. Thank you, your honors. Mr. Clardy, if you could please mute your device, and Mr. Wish, if you could introduce yourself back on the record. Thank you, your honors. Benjamin Wish for the appellant, Vincent Stewart. There have been a number of questions to both appellant and appellees about the Mount Healthy defense, so let me tackle that. I want to start at the end with the influence that Mr. Seminole had on both adverse employment decisions. Deputy Chief Trask testified that Chief Trask, excuse me, that Mr. Stewart should be terminated. At summary judgment, appellees did not dispute that. As to the other adverse employment action, administrative leave, Mr. Seminole as well was part of the group that made the decision to place Stewart on paid administrative leave. That was Mr. Brandolini's testimony at the disciplinary hearing at Record 1913. But from the very beginning, Mr. Seminole's influence pervaded this investigation in a way that prevented it from reaching the correct conclusion that Mr. Stewart was truthful. It started with a delay of about six weeks before Mr. Stewart was even put on notice that he was being investigated. Mr. Wish, thank you. This is all in your brief. Thank you. Thank you very much, your honors. That concludes argument in this case. Attorney Wish and Attorney Clarity, you should disconnect from the hearing at this time.